UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | 3:23-CR-00130 (SVN) |
| ) | |
| v. ) | |
| ) | |
| GUY EUGENE, ) | |
| *Defendant*. ) | December 13, 2024 |

**RULING AND ORDER ON THE GOVERNMENT'S MOTION FOR RECONSIDERATION**

Sarala V. Nagala, United States District Judge.

In this ruling, the Court takes up the Government's motion for reconsideration of its order to hold evidentiary hearings under *United States v. Wade*, 388 U.S. 218 (1967) and *Franks v. Delaware*, 438 U.S. 154 (1978) in connection with Defendant Guy Eugene's motion to suppress evidence. *See* ECF Nos. 72, 86, 93. The Court assumes familiarity with the facts underlying this motion. For the reasons described below, the Government's motion is GRANTED IN PART and DENIED IN PART. The Court will hold a *Wade* hearing at which only the victim identified as V-1 must testify, and will not hold a *Franks* hearing.

**I.      BACKGROUND AND TIMELINESS OF THE GOVERNMENT'S MOTION**

Defendant Eugene is charged with three counts: interference with commerce by robbery; kidnapping; and carrying, using, and brandishing a firearm during and in relation to a crime of violence. Superseding Indictment, ECF No. 56. In September of 2024, Defendant filed a motion to suppress evidence. ECF No. 52. Specifically, Defendant seeks suppression of (1) V-1's pretrial identification of Defendant in a photo array, as unduly suggestive and lacking independent indicia of reliability, and any resulting in-court identification during trial, as having no origin independent of the tainted photo array procedure; and (2) the fruits of state and federal warrants that resulted in the obtaining of Defendant's cell site location records and the searching of Defendant's residence

and vehicle, because of material misrepresentations in the affidavits supporting these search warrants. *Id.* Defendant requests a *Wade* hearing regarding the pretrial photo array identification and a *Franks* hearing regarding the preparation of affidavits supporting the warrants. *Id.* In due course, the Government filed an opposition brief, and Defendant replied. ECF Nos. 66, 71. On October 21, 2024, the Court determined it appropriate to schedule a hearing under both *Wade* and *Franks*. Order, ECF No. 72.

On October 31, 2024, the Government filed a notice in which it represented that, if the Court were to find that the photo array was unduly suggestive, it would not offer V-1's out-of-court identification at trial (though it would still intend to offer V-1's in-court identification in its case-in-chief). ECF No. 80. In addition, on the issue of the *Franks* hearing, the Government would not offer as evidence the fruits of the challenged warrants, including the Bridgeport Police Department's cell cite warrant. *Id.* at 3. Rather, the Government provided notice that it intends to apply for a new federal warrant from a U.S. Magistrate Judge who has not been involved in this case, seeking the relevant cell site data; the Government represents that the affidavit in support of such a warrant will not make mention of V-1's out-of-court identification of Defendant, nor of the evidence obtained from the search of Defendant's house or car. *Id.*

In response to the Government's notice, the Court suspended the *Wade* and *Franks* hearing, allowed Defendant to respond to the Government's notice, and held oral argument on November 18, 2024, on whether the Court should order a *Wade* and *Franks* hearing in light of the Government's notice. *See* Order, ECF No. 83. At the oral argument, the Court granted Defendant's request to hold a *Wade* and *Franks* hearing. *See* Tr., ECF No. 91. Following oral argument, the Court ordered that the parties submit supplemental briefing by November 20, 2024, as to which individuals should testify at the *Wade* and *Franks* hearing, the legal basis for the

testimony, and what limits, if any, there should be on the scope of such testimony. Order, ECF No. 86. The Government sought, and the Court granted, a motion to continue the supplemental briefing deadline to November 26, 2024. Order, ECF No. 90. Defendant timely submitted the supplemental briefing requested; the Government, on the other hand, filed a motion for reconsideration regarding the Court's order to hold a *Wade* and *Franks* hearing. *See* ECF Nos. 92, 93. Defendant opposes the motion for reconsideration, maintaining that the Court should hold the requested pretrial hearing. ECF No. 98.

The Government's motion for reconsideration is not strictly timely. The Court's order to hold a *Wade* and *Franks* hearing was issued on November 18, 2024. *See* Order, ECF No. 86. Pursuant to D. Conn. L. R. Crim. P. 1(c), which incorporates D. Conn. L. R. Civ. P. 7(c) as to motions for reconsideration, the deadline by which to file a motion for reconsideration was November 25, 2024. The Government filed its motion on the following day, November 26, 2024. The Court appreciates Defendant's argument that the motion for reconsideration should be denied outright because it is untimely, and the Court does not approve of the serial response strategy the Government has employed in this matter. Nonetheless, the Court exercises its discretion to consider the motion on the merits. The Court has wide discretion to do so, particularly given the Article III justiciability issues presented regarding the *Franks* hearing. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (noting that a district court "has broad discretion to determine whether to overlook a party's failure to comply with local court rules"), *abrogated in part on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009).

**II.    *Wade* Hearing**

When a defendant objects to the identification testimony to be offered by a witness who identified the defendant before trial, the Court engages in a sequential inquiry to determine the

admissibility of the identification. *Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001). The Court first examines whether the identification procedures were unduly suggestive. *Id.* at 133–34. If a pretrial identification process was unduly suggestive, the Court then proceeds to a second step, inquiring whether a witness's in-court identification is independently reliable, "for even a suggestive procedure 'does not in itself intrude upon a constitutionally protected interest' if it did not contribute significantly to the identification of the defendant." *Id.* at 135 (quoting *Manson v. Brathwaite*, 432 U.S. 98, 113 n.13 (1977)). In considering indicia of reliability, the Court considers: "(1) the witness's opportunity to view the perpetrator during the offense; (2) his degree of attention; (3) the accuracy of his prior description; (4) his level of certainty at the time of confrontation; and (5) the length of time between the crime and the confrontation." *Brisco v. Ercole*, 565 F.3d 80, 89 (2d Cir. 2009) (citing *Neil v. Biggers*, 409 U.S. 188, 198–99 (1972)). The question of independent reliability is assessed "in light of the totality of the circumstances." *Raheem*, 257 F.3d at 135.

The Court may, in certain circumstances, make these inquiries in a pretrial hearing pursuant to *Wade*. Generally, an evidentiary hearing on a motion to suppress is required if the moving papers are "sufficiently definite, specific, detailed, and nonconjectural" to enable the Court to conclude that there are contested issues of fact. *United States v. Watson*, 404 F.3d 163, 167 (2d Cir. 2005). Ultimately, the decision whether to hold an evidentiary hearing on a motion to suppress is in the district court's discretion. *United States v. Chandler*, 164 F. Supp. 3d 368, 376 (E.D.N.Y. 2016). A request for a *Wade* hearing is generally granted where "any question is raised concerning the suggestibility of the identification procedure." *Chandler*, 164 F. Supp. 3d at 383 (cleaned up) (collecting cases).

4

Although the Court has not yet concluded that the October 14, 2022, photo array was unduly suggestive, there are enough questions as to suggestiveness to meet the standard to hold an evidentiary hearing. A pretrial identification procedure "is unduly suggestive as to a given defendant if he meets the description of the perpetrator previously given by the witness and the other . . . participants obviously do not." *Raheem*, 257 F.3d at 134 (collecting cases). V-1 had previously identified a suspect as being bearded and bald. *See* September 28, 2022, Interview at 12:26. During the photo array, V-1 again recalled the suspect having a beard and bald head. *See* October 14, 2022, Interview at 13:28–29. Defendant argues that he is the only individual in the October 14, 2022, photo array with a fully bald head and full beard. ECF No. 52-1 at 9; *See* ECF No. 54-4 at 5–15. While the Government contends that other individuals depicted in the array were bald and had some facial hair, the Court tends to agree with Defendant that his photo was the only one that had all three criteria V-1 described: glasses, a bald head, and a beard. There is therefore a sufficient basis to inquire as to the suggestive nature of the array at a *Wade* hearing.

The Government represented that, if the Court holds that the array was unduly suggestive, it would not offer V-1's pretrial identification of Defendant at trial. ECF No. 80 at 2. Therefore, if the Court were to hold that the array was unduly suggestive, there would be no need for the Court to proceed to the second step of analyzing the *Biggers* factors, since the Government would affirmatively waive any argument that the pre-trial identification was independently reliable. No *Wade* hearing would be necessary under these circumstances. First, upon review, the Court agrees with the Government that the motivations of the officers who compiled and administered the photo array are irrelevant to the question of suggestiveness. *See Raheem*, 257 F.3d at 137 (recognizing that the issue of whether "assemblage of a lineup that was suggestive as to Raheem was unintentional . . . is immaterial" because "[t]he purpose of excluding identifications that result

from suggestive police procedures is not deterrence but rather than reduction of the likelihood of misidentification"). The officers' testimony therefore would not be necessary. Second, the Court would not need to hear from V-1 to resolve the disputed facts related to the *Biggers* factors, as it would not need to conduct a *Biggers* analysis at all.[1]

But the Government has stated that, even if the Court finds the photo array unduly suggestive, it would still seek to offer V-1's *in-court* identification of Defendant at trial. Thus, another inquiry is required. "Whether an in-court identification is nevertheless admissible depends on whether it has an origin 'independent' of the tainted" pretrial identification procedure. *Young v. Conway*, 698 F.3d 69, 78 (2d Cir. 2012). The factors to be considered in answering that question include: (1) the victim's opportunity to observe the alleged criminal act (the most important factor); (2) any discrepancy between any pre-trial identification description and the defendant's actual description; (3) any identification prior to the pre-trial identification procedure of another person; (4) a photographic identification of the defendant prior to the illegal pretrial identification procedure; (5) the victim's failure to identify the defendant on a prior occasion; and (6) the lapse of time between the alleged act and the pretrial identification. *Id.* (identifying these factors as the *Wade* factors); *see also id.* at 80. The Government bears the burden of proving, "by clear and convincing evidence," that the in-court identification was "based upon observations of the suspect" other than the tainted pretrial identification procedure. *Id.* at 78.

The Court concludes that a pretrial hearing in which V-1 testifies is necessary to properly assess the *Wade* factors. As to the first *Wade* factor—V-1's opportunity to observe the criminal act—the record is unclear as to how long V-1 was able to observe the perpetrator without a mask

---

[1] While Defendant believes V-1 must testify about conversations he had with law enforcement officers that are not documented in reports, the more central issue for any hearing—were the Government to argue that the out-of-court identification was independently reliable—would be V-1's testimony related to the *Biggers* factors.

and under what circumstances. The record thus far indicates that V-1 allegedly observed the suspect in question in a fluid sequence of events on September 26, 2022, involving multiple physical altercations, all while the suspect and other individuals involved wore ski masks. Bridgeport Police Dep't Incident Report, ECF No. 54–3 at 5–7; *see generally* September 28, 2022, Interview. According to the incident report, V-1 was struck on the head with a firearm at the beginning of the altercation by one suspect, and then punched in his face and rib area by a second suspect, before being forced into a vehicle. ECF No. 54-3 at 5. When he was forced into the vehicle, V-1's head was allegedly pushed down to obscure his vision. *See* ECF No. 54-3 at 5–6. V-1 recounted that, at one point, a suspect put a gun to V-1's head and told V-1 not to lift his head. *Id.* at 6.

Importantly, although it is not mentioned in the original incident report, V-1 told officers during his September 28, 2022, interview that he was able to briefly lift the ski mask of the suspect he eventually identified as Mr. Eugene during a physical altercation, before the suspect promptly pulled the ski mask back down. *See* September 28, 2022, Interview at 12:49. But it is unclear how well V-1 was able to identify the suspect's face and for how long. Although V-1 indicated some amount of confidence in his ability to identify the suspect during the September 28, 2022, interview, *see id.* at 12:27 ("If I [saw a picture of the suspect], I could know him because I was looking dead in his face."), the documentation of the October 14, 2022, photo array lacks an indication of V-1's confidence in identifying Defendant. *See* ECF No. 54-4. As to this "most important" factor, then, further inquiry of V-1 is necessary, so long as the Government continues to seek admission of an in-court identification of Defendant by V-1.[2] *See Young*, 698 F.3d at 80.

---

[2] The Court will allow Defendant to inquire about conversations V-1 may have had with investigators that are not documented by video or police reports, but the primary focus during the hearing should be V-1's opportunity (or lack thereof) to observe the suspect's face, and any other testimony related to the *Wade* factors.

7

While the Court is cognizant that a *Wade* hearing may cause V-1 to re-live a traumatic experience, ECF No. 93 at 10, such a concern does not outweigh the need for the Court to ensure the constitutional soundness of the identification at the heart of this case. Accordingly, the Court finds it necessary to conduct a *Wade* hearing, at which V-1 will be required to testify.

**III.**     ***Franks* Hearing**

Defendant moved to suppress both state and federal warrants that resulted in searches of Defendant's cell site location records and the Defendant's residence and vehicle. ECF No. 52-1 at 11–16. The Government argues that its recent voluntary decision to not introduce the evidence obtained through these challenged warrants moots Defendant's motion to suppress. ECF No. 93 at 11. The Government, in its notice detailing its decision to voluntarily suppress this evidence, further explained that it intends to seek an independent federal warrant for Defendant's cell site data, but that no such warrant has been sought yet. ECF No. 80 at 4. Defendant maintains that a *Franks* hearing is necessary regarding the warrant that the Government may seek. ECF No. 92 at 3–7.

As to the evidence that the Government has decided to suppress voluntarily, the Court agrees with the Government that Defendant's motion to suppress is moot. *See United States v. Butler*, No. 15-cr-107 (LJV) (JJM), 2017 WL 4324684, at *2 (W.D.N.Y. Sept. 29, 2017) (collecting cases standing for the proposition that, if the government represents it will not introduce disputed evidence at trial, the issue is moot); *United States v. Rivera*, No. 16 Cr. 175 (LGS), 2017 WL 1843302, at *1 (S.D.N.Y. May 8, 2017) (same). While the Court is troubled by what it perceives to be misrepresentations in the warrant affidavits at issue, Defendant has already achieved the remedy he sought: suppression of the evidence obtained through these state and

federal warrants.  There is therefore nothing left for the Court to decide as to these warrants, so no *Franks* hearing is necessary as to them.

As to the new federal warrant the Government anticipates seeking for cell site data, the Court concludes that the dispute before it is merely hypothetical at this time, leaving the Court unable to consider it.  The jurisdiction of this Court only extends to live cases and controversies. *See Lacewell v. Office of the Comptroller of the Currency*, 999 F.3d 130, 149 (2d Cir. 2021) (noting that the doctrine of ripeness "prevents a federal court from entangling itself in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur."); *United States v. Sterling*, No. 22-cr-247 (EK), 2023 WL 184447, at *1 (E.D.N.Y. Jan. 13, 2023) (denying motion to suppress and request for *Franks* hearing where motion depended on "contingent future events that may not occur as anticipated, or indeed may not occur at all") (quoting *United States v. Traficante*, 966 F.3d 99, 107 (2d Cir. 2020)).  The Court cannot issue advisory opinions.  *Evans v. Lynn*, 537 F.2d 571, 590 (2d Cir. 1975) ("[A] federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them.").  Accordingly, the Court cannot hold a *Franks* hearing regarding a warrant the Government has yet to obtain.  Of course, the Court will address any future motion to suppress filed by Defendant regarding the fruits of future Government searches, should one be filed.

**IV.    CONCLUSION**

For the reasons described herein, the Government's motion for reconsideration is GRANTED IN PART and DENIED IN PART.

The Court will hold a *Wade* hearing, as to V-1 only, on December 17 at 10:30 a.m. For clarity, the deadline by which the parties shall file a list of exhibits on the docket remains December 16, 2024. *See* ECF No. 95.

**SO ORDERED** at Hartford, Connecticut, this 13th day of December, 2024.

                                       */s/ Sarala V. Nagala*
                                       SARALA V. NAGALA
                                       UNITED STATES DISTRICT JUDGE